IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INNERCITY FIBERNET, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-cv-894 |
| | § | |
| ZAYO GROUP, LLC, | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT ZAYO GROUP, LLC'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

---

In response to Plaintiff InnerCity FiberNet, LLC's ("ICFN") Complaint, Defendant Zayo Group, LLC ("Zayo") files its Answer, Affirmative Defenses and Counterclaim, and would respectfully show:

## I.     INTRODUCTION

1.     Zayo admits that this dispute arises out of an "Indefeasible Right of Use" agreement ("IRU Agreement") as alleged in paragraph 1 of the Complaint.  The IRU Agreement speaks for itself.  The remainder of Paragraph 1 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

2.     Zayo admits that it has threatened to terminate the IRU Agreement due to ICFN's breach as alleged in paragraph 2 of the Complaint.  Zayo denies that there is an absence of conditions precedent or no material breach of the IRU Agreement on the part of ICFN.  The remainder of Paragraph 2 of the Complaint contains legal conclusions, to

1

which no response is required. To the extent a response is required, Zayo denies the same.

3.     Zayo admits that ICFN has demanded arbitration of the parties' disputes as alleged in Paragraph 3.   Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 3 of the Complaint and therefore denies the same.

## II.     JURISDICTION AND VENUE

4.     Paragraph 4 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo admits that the Court has jurisdiction.

5.     Paragraph 5 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo admits that jurisdiction is proper.

## III.     PARTIES

6.     Zayo incorporates all prior responses to the allegations in response to Paragraph 6.

7.     Zayo is without sufficient information to admit or deny the allegations of paragraph 7 of the Complaint and therefore denies the same.

8.     Zayo is without sufficient information to admit or deny the allegations of paragraph 8 of the Complaint and therefore denies the same.

9.     Admitted.

10.     Admitted.

11.     Admitted.

## IV.     FACTS

12.     Zayo incorporates all prior responses to the allegations in response to

Paragraph 12.

13.     Zayo is without sufficient information to admit or deny the allegations of paragraph 13 of the Complaint and therefore denies the same.

14.     Admitted.

15.     Zayo admits that this dispute arises out of the IRU Agreement as alleged in paragraph 15 of the Complaint.  The IRU Agreement speaks for itself.  Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 15 of the Complaint and therefore denies the same.

16.     The IRU Agreement speaks for itself.

17.     Admitted.

18.     Admitted to the extent that Sunesys owns the fiber and some of the handholes and manholes used to access the system which are subject to the rights of Zayo and that Zayo leases from Sunesys all of Sunesys' rights in the fiber, handholes and manholes. The documents evidencing Sunesys' ownership speak for themselves. Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 18 of the Complaint and therefore denies the same.

19.     Admitted to the extent that Level 3 is the owner of the conduit containing the fibers in the Dallas-Fort Worth Ring, subject to Sunesys' rights under its lease agreement for fiber in the conduit, subject to Zayo's rights leased from Sunesys. The documents evidencing Levl 3's ownership speak for themselves.

20.      The IRU Agreement speaks for itself.

21.     Zayo is without sufficient information to admit or deny the allegations of paragraph 21 of the Complaint and therefore denies the same.

22.     Zayo is without sufficient information to admit or deny the allegations of paragraph 22 regarding Windstream KDL, Inc.'s use of the fibers, and therefore denies the same.   Zayo denies that it "granted" ICFN fibers in the traditional sense – the IRU Agreement was executed as part of a Settlement Agreement by and between Zayo and Waypoint Fiber Networks Southwest, LLC (as successor in interest to Waypoint Communications, LLC [sic]) on behalf of itself and its affiliates, subsidiaries and parent, and its principals, R. Charles McLravy, Pete A. Empie, G. Woodward Stover, II and its and their predecessors-in-interest, successors and assigns (collectively "Waypoint") and Vogen Funding L.P. on behalf of itself and its affiliates, subsidiaries and parent, and its and their predecessors-in-interest, successors and assigns (collectively "Vogen") on March 2, 2011.  The Settlement Agreement and IRU Agreement speak for themselves.

23.     The Settlement Agreement between ICFN and Windstream speaks for itself. Zayo is without sufficient information to admit or deny the allegations of paragraph 23 of the Complaint and therefore denies the same.

24.     Zayo is without sufficient information to admit or deny the allegations of paragraph 24 of the Complaint and therefore denies the same.

25.     Zayo admits that one way to connect a customer to others with fiber optics from a customer's building is to splice into a fiber optic ring.  Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 25 of the Complaint and therefore denies the same.

26.     Paragraph 26 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo is without sufficient information to admit or deny the allegations of paragraph 26 of the Complaint and

therefore denies the same.  Further, the IRU Agreement speaks for itself.

27.     Denied to the extent paragraph 27 relates to any agreements outside the four corners of the IRU Agreement. The IRU Agreement speaks for itself.

28.     Denied.

29.     Zayo denies that there was any agreement as alleged in paragraph 28.  Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 29 of the Complaint and therefore denies the same.

30.     Denied.

31.     Zayo denies that there was any agreement or course of dealing as alleged in paragraph 31.  Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 31 of the Complaint and therefore denies the same.

32.     Paragraph 32 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the allegations of paragraph 32.

33.     Denied.

34.     Zayo is without sufficient information to admit or deny the allegations of paragraph 34 of the Complaint and therefore denies the same.

35.     Admitted.

36.     Denied as to the statement that Zayo "increased" retail operations in the Dallas-Fort Worth area; Zayo's predecessor-in-interest Abovenet Communications, Inc. had existing operations in the Dallas-Fort Worth area and as its successor, necessarily took over such operations following the acquisition.

37.     Denied.

38.     Zayo denies that there was any agreement or course of dealing as alleged in paragraph 38.  Zayo is without sufficient information to admit or deny the remaining allegations of paragraph 38 of the Complaint and therefore denies the same.

39.     Admitted to the extent Zayo requested that Plaintiff comply with the terms of the IRU Agreement which required Zayo's express approval and supervision prior to ICFN performing any work, including splicing, along the Grantor System. The IRU Agreement speaks for itself.  Zayo denies that there was any agreement or course of dealing as alleged in paragraph 39.

40.     Zayo is without sufficient information to admit or deny the allegations of paragraph 40 of the Complaint and therefore denies the same.

41.     Denied.

42.     Denied.

43.     Admitted to the extent Zayo received a splice request from ICFN on or about January 15, 2015.  As to the remaining allegations in paragraph 43, Zayo is without sufficient information to admit or deny and therefore denies the same.

44.     Admitted.

45.     Denied.

46.     Denied.

47.     Zayo is without sufficient information to admit or deny the allegations of paragraph 47 of the Complaint and therefore denies the same.

48.     Admitted.

49.     Plaintiff has characterized the February 20, 2015 letter Zayo sent to ICFN and Zayo denies that characterization is accurate, but the document that speaks for itself.

50.     Plaintiff has characterized the February 20, 2015 letter Zayo sent to ICFN and Zayo denies that characterization is accurate, but the document that speaks for itself.

51.     Admitted to the extent that Osborn had discussions with Stillwell regarding some splice work in or around March 2011, but denied as to the remaining allegations since Osborn and Stillwell never reached an agreement and ICFN never received Zayo's permission to perform these three splice points. The February 20, 2015 letter Zayo sent to ICFN is a document that speaks for itself.

52.     Denied that Zayo and ICFN had a course of dealing or that ICFN could obtain approval from Future Telecom, Inc. to perform splice at these two splice points. The February 20, 2015 letter Zayo sent to ICFN is a document that speaks for itself.

53.     The February 20, 2015 letter Zayo sent to ICFN is a document that speaks for itself.

54.     Admitted.

55.     Admitted.

56.     Zayo is without sufficient information to admit or deny the allegations of paragraph 56 of the Complaint and therefore denies the same.

57.     Zayo is without sufficient information to admit or deny the allegations of paragraph 57 of the Complaint and therefore denies the same.

58.     Zayo is without sufficient information to admit or deny the allegations of paragraph 58 of the Complaint and therefore denies the same.

59.     Paragraph 59 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo is without sufficient information to admit or deny the allegations of paragraph 59 of the Complaint and

therefore denies the same.

60.     Zayo is without sufficient information to admit or deny the allegations of paragraph 60 of the Complaint and therefore denies the same.

61.     Paragraph 61 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo is without sufficient information to admit or deny the allegations of paragraph 61 of the Complaint and therefore denies the same.

62.     Denied that Zayo put a "moratorium" on all splicing of new ICFN customers and admitted to the extent that Zayo requested ICFN cure or otherwise remedy its past breaches and ongoing trespass of the Grantor System in breach of the IRU Agreement before any further work would be performed.

63.     Denied.

### V.     CAUSES OF ACTION

### CLAIM ONE

64.     Zayo incorporates all prior responses to the allegations in response to Paragraph 64.

65.     Admitted.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Paragraph 71 of the Complaint contains legal conclusions, to which no

response is required. To the extent a response is required, Zayo denies the same.

72.     Denied.

73.     Paragraph 73 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

74.     Paragraph 74 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

75.     Denied.

76.     Paragraph 76 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

## CLAIM TWO

77.     Zayo incorporates all prior responses to the allegations in response to Paragraph 77.

78.     Paragraph 78 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo is without sufficient information to admit or deny the allegations of paragraph 78 of the Complaint and therefore denies the same.

79.     Admitted to the extent Zayo received a splice request from ICFN on or about January 15, 2015; as to the remaining allegations in paragraph 79, Zayo is without sufficient information to admit or deny and therefore denies the same.

80.     Admitted that Zayo has not performed the splicing services requested from ICFN on or about January 15, 2015; denied to the extent that it has refused to respond to ICFN's inquiries regarding the same.

81.     Denied to the extent that Zayo refuses to perform any splicing work at all;

admitted to the extent that Zayo has requested ICFN cure or otherwise remedy its past breaches and ongoing trespass of the Grantor System in breach of the IRU Agreement before any further work would be performed.

82.     Zayo is without sufficient information to admit or deny the allegations of paragraph 82 of the Complaint and therefore denies the same.

83.     Paragraph 83 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

84.     Denied.

85.     Paragraph 85 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

86.     Paragraph 86 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

87.     Paragraph 87 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

## CLAIM THREE

88.     Zayo incorporates all prior responses to the allegations in response to Paragraph 88.

89.     Admitted.

90.     Paragraph 90 of the Complaint contains legal conclusions, to which no response is required. Further, 47 U.S.C. § 202(a) is a law which speaks for itself.

91.     Denied to the extent that Zayo refuses to perform any splicing work at all; admitted to the extent that Zayo has requested ICFN cure or otherwise remedy its past breaches and ongoing trespass of the Grantor System in breach of the IRU Agreement

before any further work would be performed.

92.    Paragraph 92 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

93.    Paragraph 93 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

94.    Paragraph 94 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

95.    Paragraph 95 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

96.    Paragraph 96 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

97.    Paragraph 97 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

98.    Paragraph 98 of the Complaint contains legal conclusions, to which no response is required. Further, 47 U.S.C. § 251(b)(1) is a law which speaks for itself.

99. Paragraph 99 of the Complaint contains legal conclusions, to which no response is required. Further, 47 U.S.C. § 251(b)(4) is a law which speaks for itself.

100.    Paragraph 100 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

101.    Paragraph 101 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

102.    Denied.

103.    Paragraph 103 of the Complaint contains legal conclusions, to which no

response is required. To the extent a response is required, Zayo denies the same.

104.    Paragraph 104 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

105.    Paragraph 105 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

106.    Paragraph 106 of the Complaint contains legal conclusions, to which no response is required. Further, 47 U.S.C. § 206 is a law which speaks for itself.

107.    Paragraph 107 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo admits it is a common carrier.

108.    Paragraph 108 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

## CLAIM FOUR

109.    Zayo incorporates all prior responses to the allegations in response to Paragraph 109.

110.    Paragraph 110 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

111.    Admitted to the extent that Zayo asserted that ICFN breached the IRU Agreement and requested ICFN cure or otherwise remedy its past breaches and ongoing trespass of the Grantor System before any further work would be performed; denied that it requested ICFN disconnect its customers or placed a "moratorium" on new connections.

112.    Zayo is without sufficient information to admit or deny the allegations of paragraph 112 of the Complaint and therefore denies the same.

113.    Denied.

114.    Denied.

115.    Paragraph 115 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

116.    Paragraph 116 of the Complaint contains legal conclusions, to which no response is required. To the extent a response is required, Zayo denies the same.

## VI.    **ARBITRATION**

117.    Zayo is without sufficient information to admit or deny the allegations of paragraph 117 of the Complaint and therefore denies the same.

## **AFFIRMATIVE DEFENSES**

Zayo pleads the following separate and distinct affirmative defenses without conceding that it bears the burden of proof as to any of these issues.  Zayo reserves the right to assert additional affirmative defense that discovery or other case developments indicate are proper.

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

118.    Plaintiff's Complaint fails to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

(Lack of Standing)

119.    Plaintiff may not be the real party in interest to some or all of the property that is the subject of the Complaint.

THIRD AFFIRMATIVE DEFENSE

(Waiver)

120.    Plaintiff's claims are barred by the doctrine of waiver.

FOURTH AFFIRMATIVE DEFENSE

(Estoppel)

121.    Plaintiff's claims are barred by the doctrine of estoppel.

FIFTH AFFIRMATIVE DEFENSE

(Quasi-Estoppel)

122.    Plaintiff's claims are barred by the doctrine of quasi-estoppel.

SIXTH AFFIRMATIVE DEFENSE

(Laches)

123.    Plaintiff's claims are barred by the doctrine of laches.

SEVENTH AFFIRMATIVE DEFENSE

(Statutes of Limitation)

124.    Plaintiff's claims are barred by the applicable statutes of limitation.

EIGHTH AFFIRMATIVE DEFENSE

(Unclean Hands)

125.    Plaintiff's claims are barred by the doctrine of unclean hands.

NINTH AFFIRMATIVE DEFENSE

(Unjust Enrichment)

126.    Plaintiff's claims are barred on the grounds that Plaintiff would be unjustly enriched if it were granted any relief against Zayo.

## TENTH AFFIRMATIVE DEFENSE

### (No Economic Loss)

127.    Plaintiff's claims are barred and limited by the fact that Plaintiff has suffered no compensable damages, injury or economic loss.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Uncertain Damages)

128.    Plaintiff's claims are barred on the grounds that Plaintiff's alleged damages are uncertain and speculative.

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

129.    Plaintiff has failed to mitigate its damages in connection with the matters referred to in the Complaint and such failure to mitigate bars and/or diminishes Plaintiff's recovery, if any, against Zayo.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Lack of Case or Controversy)

130.    Plaintiff's claim for declaratory judgment fails for lack of case or controversy.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

131.    Zayo reserves the right, upon completion of discovery and investigation or otherwise, to assert such additional defenses as may be appropriate.

## COUNTERCLAIMS

Zayo Group, LLC ("Zayo") alleges as follows in its counterclaims against InnerCity FiberNet, LLC ("ICFN"):

### I.      INTRODUCTION

1.      This dispute arises out of ICFN's attempt to gain more than it bargained for when it purchased rights to an indefeasible right of use ("IRU") for fiber optic cable from a third-party (not Zayo) in 2008 (the "IRU Agreement").   ICFN has been manufacturing "disputes" to try and pressure Zayo into amending the IRU Agreement.   Despite ICFN's repeated threats to sue if Zayo did not accept ICFN's demands, Zayo declined to do so.   In addition, Zayo discovered that ICFN had been breaching, and continues to breach, the IRU Agreement by illegally accessing the fiber optic cables without permission.   Zayo sent a default letter to ICFN as a result, asking ICFN to cure its breaches or be in default of the IRU Agreement. In response, ICFN filed this lawsuit.

### II.      FACTUAL BACKGROUND

2.      The IRU at issue in this case has been the subject of several assignments. Zayo and ICFN were not the original parties to the IRU Agreement.

3.      On or around May 17, 2006, Citynet Holdings, LLC ("Citynet") and TEN X Capital Partners, LLC entered into a Grant of Sub-IRU where TEN X granted to Citynet rights and use of the fiber optic cabling, including the Dallas-Fort Worth fiber optic cable ring and all associated manholes, hand holes, and splice cases ("Original IRU Agreement").

4.      On or about August 30, 2006, Citynet Holdings, LLC ("Citynet") granted Waypoint Communications, LLC an IRU in fiber optic cable located in Phoenix, Arizona

and Dallas, Texas, including the Dallas-Fort Worth fiber optic cable ring (referred to herein as the "2006 IRU Agreement").

5.      On or around June 13, 2007, TEN X Capital Partners, LLC assigned its rights under the Original IRU Agreement to Sunesys, LLC.

6.      On or about September 24, 2008, Citynet assigned to Zayo's predecessor-in-interest Zayo Bandwidth Midwest, LLC Citynet's rights and obligations under the Original IRU Agreement and the 2006 IRU Agreement ("2008 Assignment"). The 2008 Assignment conferred upon Zayo all of Citynet's rights and use of the fiber optic cabling under the 2006 IRU Agreement, including the Dallas-Fort Worth fiber optic cable ring and all associated manholes, hand holes, and splice cases.

7.      In or around October 2010, a dispute arose regarding the 2006 IRU Agreement between Zayo, Waypoint Fiber Networks Southwest, LLC (as successor in interest to Waypoint Communications, LLC) (collectively "Waypoint") and ICFN, who Waypoint wanted to assign its 2006 IRU rights.

8.      On or about March 2, 2011, Zayo, Waypoint, Vogen Funding L.P. ("Vogen") and ICFN entered into a Settlement Agreement and Mutual Release to resolve the dispute, which included, among other things, execution of an agreement memorializing ICFN and Zayo's respective rights and obligations in certain fiber and services.

9.      ICFN and Zayo executed an IRU whereby ICFN granted to Zayo certain fibers and services on March 2, 2011 ("Zayo IRU Agreement").

10.     Zayo and ICFN entered into the Dallas/Phoenix Dark Fiber IRU whereby Zayo granted use of certain fibers, including the Dallas-Fort Worth fiber optic cable ring ("Grantor System") to ICFN on March 2, 2011 ("Dallas-Phoenix IRU Agreement").

11.     Under Section 6 of the Dallas/Phoenix IRU Agreement, ICFN has no right to perform work on or otherwise physically access the Grantor System, except with the express permission and supervision of Zayo and at ICFN's expense.

12.     Under Section 9 of the Dallas/Phoenix IRU Agreement, any and all work with respect to Grantor System must be performed by Zayo, subject to Zayo and ICFN's mutual agreement on pricing, terms and conditions and the execution of separate agreements for Construction Services.

13.     Under Section 8.2 of the Dallas/Phoenix IRU Agreement, ICFN agreed that it would not use its facilities, including the fibers on the Grantor System and associated equipment, in a way that interferes in any way, adversely affects the use of, endangers and/or damages the Grantor System, as defined in the Dallas/Phoenix IRU Agreement.

14.     From time to time, the parties entered into construction service agreements for work that ICFN desired to have performed along the Grantor System whereby ICFN would submit a work request and its location, Zayo would respond with a quote for such services, and, upon receipt of the quote, ICFN would either request Zayo to perform the work or not.

15.     At ICFN's specific request, Zayo's Outside Plant ("OSP") team had to include very specific details for each work request beyond its ordinary course of business in completing each quote.

16.     Despite purchasing its IRU rights from Waypoint (not Zayo), ICFN failed to obtain from Waypoint and currently does not maintain up-to-date records regarding its fibers on the Grantor System.

17.    As a result, each work request submitted by ICFN requires extensive work by Zayo's OSP team to prepare an accurate quote.

18.    In or around December 2014, ICFN took issue with the express language of the Dallas/Phoenix IRU Agreement and threatened to sue Zayo if Zayo did not amend the Dallas/Phoenix IRU Agreement.

19.    In or around February 2015, Zayo discovered at least seven (7) separate instances where ICFN had illegally accessed the Grantor System in violation of Section 6 and Section 9 of the Dallas/Phoenix IRU.

20.    Illegally accessing the Grantor System can result in dire consequences.  It can result in, among other things, the reduction of network viability, disruption of service to customers, and interruption of emergency and disaster response.

21.    On information and belief, ICFN's illegal access of the Grantor System has already resulted in damage to the Grantor System, including, without limitation, a reduction in the slack along the route.  Fiber optic cables have a finite amount of slack, or excess cable, along the route in order to accommodate the expansion and contraction of the earth and to make it easier to repair in the event of a cable cut.  By illegally accessing the Grantor System and splicing into the Grantor System at unauthorized locations, ICFN has reduced the available slack.

22.    On or about February 20, 2015, Zayo sent ICFN a notice of default outlining these seven (7) instances of illegal accesses and ongoing trespasses, explaining the seriousness of ICFN's breach and requesting that ICFN cure the same.

23.     Under Section 19 of the Dallas/Phoenix IRU Agreement, ICFN had 30 days from the date of the notice letter to cure its breaches or be in default of the Dallas/Phoenix IRU Agreement, or by March 22, 2015.

24.     Instead of taking steps to work with Zayo to cure its breaches, ICFN denied it was in breach of the Dallas/Phoenix IRU Agreement and has refused to cure its breaches.

25.     As of the date March 22, 2015, ICFN's failed to cure or take steps to cure its breaches and ongoing trespass of the Grantor System, and, as a result, remains in default of the Dallas/Phoenix IRU Agreement.

26.     On or about May 4, 2015, Zayo sent ICFN written notice that that its failure to cure its' breaches and the ongoing defaults caused a termination of the Dallas/Phoenix IRU Agreement pursuant to Section 19.2 of the Dallas/Phoenix IRU Agreement.

### III.     CAUSES OF ACTION

#### COUNTERCLAIM ONE

(For Breach of Contract)

27.     Zayo refers to paragraphs 1 through 26 above and hereby incorporates said paragraphs by reference as though fully set forth herein.

28.     ICFN has breached the Dallas/Phoenix IRU Agreement as set forth above by repeatedly illegally accessing the Grantor System in violation of the terms of the Dallas/Phoenix IRU Agreement.

29.     Despite receiving written notice of its breaches, ICFN has failed to timely cure its breaches and is in default of the Dallas/Phoenix IRU Agreement.

30.     ICFN's illegal access of the Grantor System has damaged Zayo by, among other things, reducing the viability of the Grantor System, in an amount to be proven at trial.

31.     Moreover, pursuant to Section 20.2 of the Dallas/Phoenix IRU Agreement, ICFN is responsible for a termination charge equal to 100% of the monthly recurring charges for the remainder of the term of the Dallas/Phoenix IRU Agreement, which runs until December 1, 2019, in the amount of approximately $218,000.00.

32.     In addition to the foregoing, Zayo seeks to recover its reasonable attorneys' fees in accordance with Tex. Civ. Prac. & Rem. Code 38.001.

COUNTERCLAIM TWO

(For Declaratory Relief)

33.     Zayo refers to paragraphs 1 through 32 above and hereby incorporates said paragraphs by reference as though fully set forth herein.

34.     An actual controversy exists between Zayo and ICFN regarding the parties' rights and obligations under the Dallas/Phoenix IRU Agreement.

35.     Pursuant to Section 19.2 of the Dallas/Phoenix IRU Agreement and as a result of ICFN's refusal to cure its breaches and continued default, the Dallas/Phoenix IRU Agreement has terminated.

36.     Although Zayo has demanded, and hereby demands, that ICFN acknowledge the termination of the Dallas/Phoenix IRU Agreement and abandon the Grantor System, ICFN has failed and refused, and continues to fail and refuse, to acknowledge cure its defaults and recognize that the Dallas/Phoenix IRU Agreement has terminated.

37.     A declaration is necessary and appropriate at this time in order that Zayo

may establish that the Dallas/Phoenix IRU Agreement has been terminated and for a declaration of a reasonable timeframe for ICFN to migrate off of the Grantor System.

## IV.    ARBITRATION

38.    ICFN has concurrently filed a petition with the American Arbitration Association, asserting identical claims in arbitration.  This Answer and Counterclaim is filed in order to preserve Zayo's defenses and Counterclaims, and Zayo intends to proceed in arbitration pending a final award by a duly appointed arbitrator.

## V.    RELIEF REQUESTED

(i)     That ICFN take nothing by its Complaint;

(ii)    That ICFN be cited to appear and respond to Zayo's Counterclaims;

(iii)   For a judgment against ICFN for Zayo's actual, consequential and all other damages suffered by Zayo as a result of ICFN's breach of the parties' contract;

(iv)    For a Declaratory Judgment as set forth and requested herein;

(v)     For prejudgment and post-judgment interest at the maximum rate allowed by law;

(vi)    For Zayo's reasonable attorneys' fees and costs;

(vii)    That this action be stayed pending resolution of the parties' arbitration;

(viii)    For all other relief to which Zayo may be entitled.

Dated:  May 4, 2015

Respectfully submitted,

PILLSBURY  WINTHROP  SHAW  PITTMAN, LLP

By:  /s/ Vincent E. Morgan

Vincent E. Morgan
Texas State Bar No. 24027529
Tamara D. Bruno
Texas State Bar No. 24082746
2 Houston Center
909 Fannin, Suite 2000
Houston, Texas 77010
Telephone:  (713) 276-7625
Facsimile:  (281) 582-6308
vince.morgan@pillsburylaw.com
tamara.bruno@pillsburylaw.com

Michael J. Finnegan
Nathan M. Spatz
(*pro hac vice* to be requested)
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017
Telephone:  (213) 488-7458
Facsimile:  (213) 608-3737
mfinnegan@pillsburylaw.com
nathan.spatz@pillsburylaw.com

*Attorneys for Defendant Zayo Group, LLC*

## CERTIFICATE OF SERVICE

On May 4, 2015, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court and it will provide a copy to all counsel of record in accordance with Federal Rule of Civil Procedure 5(b) and Local Rule 5.1.

/s/ Vincent E. Morgan
Vincent E. Morgan